UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60038-Civ-SCOLA

H.E.R.O., INC. et al.,

    Plaintiffs,

vs.

IDA C. SELF,

    Defendant.

_____/

### ORDER ON MOTION TO DISMISS

THIS MATTER is before the Court on [ECF No. 7] the March 28, 2012 letter from Defendant Ida C. Self to the undersigned United States District Judge. Together with the Defendant's Affidavit, the Court construes the Defendant's letter as a *pro se* Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Improper Venue. The Plaintiffs, H.E.R.O., Inc. and PromiseCare Pharmacy, LLC, filed a response [ECF No. 11] at the Court's direction. For the reasons set forth below, the Court finds that it may exercise personal jurisdiction over the Defendant and that this forum is proper. Therefore, Defendant's Motion to Dismiss is denied.

### Introduction

In this action, Plaintiffs H.E.R.O., Inc. and PromiseCare Pharmacy, LLC seek a declaration under the federal copyright laws that they are "the owner of, and have the right to use, their highly successful 'H.E.R.O.' diabetes management education program in the face of claims and allegations made by a former employee," Defendant Ida C. Self ("Self"). Compl. ¶ 1. Plaintiffs also claim that Self tortiously interfered with their contractual business relationships by disparaging them and claiming ownership over their health education program. *Id.* ¶ 28. In addition to declaratory relief, Plaintiffs seek an injunction and damages. *Id.* at 6 (Prayer for Relief).

While Plaintiffs are Tennessee corporations, Plaintiff H.E.R.O. has its headquarters and principal place of business in Broward County, Florida. Plaintiffs hired Self as a senior management employee to assist with the development and implementation of a health services program. Although Self lives in Tennessee, she was told at the time of hire that travel to South Florida would be required. During the course of her employment in 2010 and 2011, Self communicated with Plaintiffs in Florida on a bi-weekly basis and regularly traveled to South Florida to work on aspects of the health services program and to teach classes and conduct training.

In October 2011, Self tendered notice of resignation and her employment with Plaintiffs ceased soon thereafter. After leaving the company, Self allegedly made ownership claims to portions of the program, despite previously agreeing not to do so. Plaintiffs allege that Self's ownership claims are preventing investment in the company and causing irreparable harm.

Presently before the Court is Self's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Improper Venue. Self responded to the Complaint with an affidavit and letter to the effect that this lawsuit is without merit and that she has insufficient contacts with Florida to be subjected to suit here. The Court has construed Self's submission as a Motion to Dismiss, and has received a response from the Plaintiffs. According to Plaintiffs, Self is subject to personal jurisdiction before this Court because she has sufficient contacts with the forum state for purposes of Florida's long-arm statute and due process. Plaintiffs also contend that this lawsuit is properly venued in Florida, not Tennessee, because all documents and witnesses other than Self are located here, the Plaintiffs' business headquarters is here, and Self will be put to minimum inconvenience because Plaintiffs will depose her in Tennessee.

## Legal Standards

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011). To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The plaintiff must do more than "merely reiterate the factual allegations in the complaint." *Id.* (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)). Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of the plaintiff. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." *Id.*

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today*, 218 F.3d at 1249. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" "Section 1404(a) is the statutory codification of the common law doctrine of forum non conveniens." *Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1350 (M.D. Fla. 1999). The Supreme Court has remarked that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to individualized, case-by-case consideration of convenience and fairness." *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

## Legal Analysis

The Court finds that Self is subject to personal jurisdiction and venue in the Southern District of Florida. Accordingly, Self's request for dismissal or transfer is denied.

**I.   Personal Jurisdiction**

   **A.   *Florida's Long-Arm Statute***

There are two kinds of jurisdiction under Florida's long-arm statute: specific and general. *See Stubbs*, 447 F.3d at 1360 n.3; *Canale v. Rubin*, 20 So. 3d 463, 465 (Fla. 2d DCA 2009). "General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated, while specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint." *Stubbs*, 447 F.3d at 1360 n.3 (citations omitted). Plaintiffs allege that Self "has engaged in substantial and not isolated activities within this State, including activities in this State related to her employment with Plaintiff Hero, which is headquartered in this State." Compl. ¶ 6. Plaintiffs also allege that Self "made numerous trips to this

State in her capacity as an employee of Plaintiffs and directed communications giving rise to this action into this State." *Id.* The Court analyzes these allegations to determine whether Self is subject to either specific or general personal jurisdiction.

1. General Personal Jurisdiction

Florida's long-arm statute provides for general personal jurisdiction over a non-resident "defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise," and irrespective of "whether or not the [plaintiff's] claim arises from that activity." *See* Fla. Stat. § 48.193(2); *Stubbs*, 447 F.3d at 1361. To satisfy the "substantial and not isolated activity" requirement, Plaintiffs must demonstrate that Self had "continuous and systematic general business contact" with Florida. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006); *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1145 (Fla. 3d DCA 2007); *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999). "The requisite threshold of 'continuous and systematic' contacts is significantly more demanding than the showing necessary to establish specific jurisdiction because section 48.193(2) does not require any connection between a plaintiff's claim and the defendant's Florida activities." *Vos, B.V. v. Payen*, 15 So. 3d 734, 736 (Fla. 3d DCA 2009).

Plaintiffs allege that Self was engaged in "substantial and not isolated activity" in Florida during the course of her employment. Self counters by affidavit that this "lawsuit does not arise out of or relate to any activity in Florida" and that she does not live in Florida or own property here. *See* Self Aff. ¶¶ 5, 9. As to the first averment, the Court plainly rejects the notion that Plaintiffs' claims have no connection to Self's contacts with Florida. The only contacts of which we are aware concern Self's activities in Florida while employed by Plaintiffs, and the Complaint seeks relief on account of Self's ownership claims to programs allegedly created in the course of that employment. Regardless, it is immaterial for purposes of general jurisdiction whether or not there is any connection whatsoever between Self's activities in Florida and Plaintiffs' claims against her. *See Vos., B.V.*, 15 So. 3d at 736. As to the second averment, whether a defendant owns property in Florida or resides here is not dispositive if other contacts are shown.

Here, Plaintiffs allege and argue that Self, in the course of her employment, made numerous trips to Florida and directed communications to Florida. Plaintiffs substantiate these assertions with declarations from two business executives, including the individual who hired Self. These declarations state that when Self was hired, she was told and accepted that "the company was now based in Florida and that her duties would involve frequent travel to Florida and constant interfacing with Florida staff and administrators"; that Self had bi-weekly telephone calls with Plaintiffs in Florida; that Self traveled

to South Florida on numerous occasions, including from June 27-29, 2010 to teach classes, from December 7-9, 2010 to set up modules, from December 14-15, 2010 to conduct a class and an audit, and on at least one other occasion to film a training video. *See* Leight Decl. ¶¶ 9-10, 13-16; Smith Decl. ¶¶ 9-16. These allegations, if unrebutted, are sufficient to justify the exercise of general jurisdiction. *See Nordmark Presentations, Inc. v. Harman*, 557 So. 2d 649, 651 (Fla. 2d DCA 1990); *Hatfield v. AutoNation, Inc.*, 915 So. 2d 1236, 1244-45 (Fla. 4th DCA 2005). Self's affidavit fails to contradict these allegations, as she admits that she performed services in Florida while working for Plaintiffs. *See* Self Aff. ¶¶ 3-4. Her only argument is that she engaged in such contacts because she was asked, or required, to do so by Plaintiffs. *See id.* Self appears to operate under the impression that her contacts with Florida must be voluntary contacts independent of what she agreed to do for Plaintiffs in the course of her employment. There is no such requirement under Florida law, however. *Cf. Lady of Am. Franchise Corp. v. Advecor, Inc.*, 2007 WL 1489799, at *3 (S.D. Fla. May 18, 2007) ("[W]ho initiated the contact is not dispositive where Defendant willingly engaged in a business transaction with Plaintiff, a Florida corporation, which gave rise to this lawsuit."). Thus, Self's affidavit fails to rebut Plaintiffs' allegations that she had substantial and not isolated contacts with Florida during the course of her employment.

2. Specific Personal Jurisdiction

Although they do not label it as such, Plaintiffs also appear to make an argument in favor of specific jurisdiction. As relevant here, Florida's long-arm statute provides for specific personal jurisdiction over a non-resident defendant as follows:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> * * *
>
> (b) Committing a tortious act within this state.

*See* Fla. Stat. § 48.193(1).

In plain English, this provision permits the exercise of specific personal jurisdiction over Self "for any cause of action arising from" Self's tortious conduct committed in Florida. *See id.* Although Self's alleged acts of disparagement do not appear to have physically occurred in Florida, it is well settled that "tortious conduct committed elsewhere but causing harm in Florida can satisfy part (1)(b) of Florida's long-arm statute." *See Koch v. Royal Wine Merchants, Ltd.*, 2012 WL 957536, at *7

(S.D. Fla. Mar. 21, 2012); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999). Thus, Self's allegedly tortious conduct committed in Tennessee and elsewhere could, in theory, support personal jurisdiction if harm resulting from such conduct was felt in Florida.

The allegations do not set forth precisely where Self committed disparagement and tortious interference; the Complaint merely asserts that "[Self] has contacted Plaintiffs' business associates and has made unwarranted claims disparaging Plaintiffs and their ownership of the Program." Comp. ¶ 15. Thus, the disparagement and tortious interference complained of could have been committed in Tennessee or anywhere that Plaintiffs' business associates are found. It is clear, however, that the real effects of Self's alleged infringement, disparagement, and tortious interference would be felt where the Plaintiffs, as owners of the health education program, reside and conduct business – which, in this case, is Florida. *See Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1331 (S.D. Fla. 2010); *Lehigh Techs., Inc. v. Farrah*, 2009 WL 179672, at *5 (M.D. Fla. Jan. 23, 2009); *Do Something, Inc. v. San Diego Rock Church, Inc.*, 2012 WL 1382276, at *1 (S.D.N.Y. Apr. 20, 2012); *Penguin Group (USA) Inc. v. Am. Buddha*, 640 F.3d 497 (2d Cir. 2011). This is so because Plaintiffs' business operations are centered in Florida and their health education programs were primarily developed here. The injurious effects to Plaintiffs in Florida may reasonably take the form of damage to goodwill, lost sales, or lost customers. In addition, as Plaintiffs point out, Self's "representations regarding the ownership of the health care program are being made, outside the state, for the purposes of inducing [Plaintiffs] to pay monies or otherwise negotiate over [their] right to [their] own program." *See* Resp. at 7. This is yet another way that Plaintiffs may experience injury in Florida. Self has come forward with no argument, averment, or evidence to the contrary. Accordingly, Plaintiffs' allegations and arguments are collectively sufficient to support specific jurisdiction under section 48.193(1)(b), because Self's out of state tortious conduct has resulted in concrete harm to Plaintiffs in Florida. *See Bangor Punta Ops., Inc. v. Universal Marine Co., Ltd.*, 543 F.2d 1107, 1109 (5th Cir. 1976).

### B. Due Process

Having found Self subject to personal jurisdiction under Florida's long-arm statute, the Court must consider whether exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment. *See Posner*, 178 F.3d at 1220; *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258-59 (11th Cir. 1996). There is no due process problem so long as "minimum contacts" exist between Self and Florida and exercising jurisdiction over her does not offend "traditional notions of fair play and substantial justice." *See Posner*, 178 F.3d at 1220.

In order for there to be sufficient "minimum contacts," three criteria must be met. *Sculptchair*, 94 F.3d at 631. First, Self's contacts with Florida must be related to Plaintiffs' cause of action or have

given rise to it. *Id.* Second, the contacts must involve some purposeful availment of the privilege of doing business in Florida, thereby invoking the benefits and protections of its laws. *Id.* Finally, Self's contacts with Florida must be such that she could reasonably anticipate being haled into court here. *Id.*

On the record before the Court, each of these requirements is satisfied. First, Self's contacts with Florida were undertaken in the course of her employment with Plaintiffs and include her work on, and development of, certain aspects of the health education programs over which she is now allegedly asserting claims of ownership. Plaintiffs' claims are sufficiently tied to this conduct. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009). Second, Self purposefully availed herself of the benefits of doing business in Florida. She was told when hired that Plaintiffs were based in Florida and that frequent contact with, and travel to, Florida would be required in the course of her employment. She agreed to these conditions. Further, during her employment, she participated in bi-weekly calls with Plaintiffs in Florida; helped to develop the at-issue health educational programs for Plaintiffs in Florida; and conducted classes and training for Plaintiffs in Florida. Considering these facts, the Court finds that Self's contacts did not reach Florida haphazardly, by some attenuation or accident beyond her anticipation or control. *See Ben M. Hogan Co., Inc. v. QDA Inv. Corp.*, 570 So. 2d 1349, 1351 (Fla. 3d DCA 1990). Third, the Court finds it was imminently foreseeable that Self could be haled into Florida court for asserting competing claims of ownership to certain health educational programs that she helped develop in Florida for a corporation headquartered in Florida. *See S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997).

Lastly, the Court finds that the exercise of personal jurisdiction over Self comports with traditional notions of "fair play and substantial justice." *See Oldfield*, 558 F.3d at 1221. In reaching this conclusion, the Court has considered the burden on Self of defending suit in Florida; Florida's interest in adjudicating the suit; Plaintiffs' interest in obtaining effective relief; and the interests of the interstate judicial system in using resources efficiently.

Bearing on this analysis are Self's averments that she "cannot properly defend [herself] in a lawsuit in a Florida court," and "[a]ssertion of personal jurisdiction over [her] in a lawsuit in Florida is unreasonable and unfair." *See* Self Aff. ¶¶ 7-8. These allegations are essentially mere conclusions; they do not furnish the Court with anything substantive that would show why or how Self cannot defend herself in Florida, or why or how an exercise of jurisdiction would be "unreasonable and unfair." Moreover, "generalized inconvenience of litigating in a foreign forum is typically not sufficient to establish that the exercise of jurisdiction is constitutionally unreasonable." *See Savage Universal Corp. v. Grazier Const., Inc.*, 2004 WL 1824102, at *11 (S.D.N.Y. Aug. 13, 2004).

In her letter, Self suggests personal jurisdiction is unfair because she is "a retired individual living only on retirement" and "cannot afford to defend [herself]." *See* Self Letter at 1. The Court is certainly not callous to these concerns; however, because Self is proceeding *pro se*, the cost of defending suit, in monetary terms, is the same whether in Tennessee or Florida. *See Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 2009 WL 1059647, at *8 (S.D.N.Y. Apr. 17, 2009) (exercising jurisdiction over non-resident *pro se* litigant did not offend due process because "the defendant's lack of financial resources presents a barrier to litigation in any location," and "[t]he inconvenience and cost of defending a lawsuit is not the type of burden that is typically deemed sufficient to bar the exercise of jurisdiction as constitutionally unreasonable"); *Savage Universal Corp.*, 2004 WL 1824102, at *11 ("the statements that [non-resident *pro se* defendant] has offered regarding his rural location, his lack of financial resources, and his various injuries and disabilities, if credited, would present a similar barrier to litigation even in the federal courts in [his home state], where [defendant] would clearly have no claim for lack of personal jurisdiction") (citation omitted).

To be sure, there is the added cost of travel to Florida, but the Court gives this factor little weight because modern conveniences have mostly ameliorated the burdens of defending suit in another state. *See Sculptchair*, 94 F.3d at 632 (finding that "modern methods of transportation and communication have significantly ameliorated [the defendant's] burden" of defending suit away from home); *Centrifugal Force, Inc.*, 2009 WL 1059647, at *8 (finding that "[m]odern technology may be able to overcome many of the difficulties associated with travel" for non-resident *pro se* litigant). Indeed, it is doubtful whether Self will have to travel to Florida much at all. Plaintiffs will have to depose her in Tennessee, and other discovery may be undertaken remotely. *See* Resp. at 9 ("Plaintiff, having selected the forum, will have to conduct depositions of Defendant in Tennessee thereby obviating any travel costs."). Party conferences, and even pretrial hearings, may be done by telephone. *See id.* In any case, Self has demonstrated herself capable of undertaking some travel to Florida, as evidenced by the fact that she traveled back and forth from Tennessee to Florida in the course of her employment with Plaintiffs just over a year ago. *See Except'l Urgent Care Ctr. I, Inc. v. Protomed Med. Mgmt. Corp.*, 2009 WL 1370818, at *10 (M.D. Fla. May 14, 2009) ("The fact that [defendant] was able to travel to Florida to assist with training and correct the alleged software defects also demonstrates that access to Florida is not overly burdensome.").

Whatever mild inconveniences Self may experience in terms of occasional travel to Florida are also heavily outweighed by other factors. Florida has a strong interest in affording relief to a company whose principal place of business is in this State and whose business activities impact this State's citizens. *See id.* Plaintiffs likewise have a strong interest in adjudicating suit here because, while

incorporated in Tennessee, Plaintiff H.E.R.O.'s headquarters are in Florida and the program over which Self is allegedly asserting competing claims was developed in Florida.  In addition, it appears that by virtue of Plaintiffs' headquarters being in Florida, most if not all of the witnesses and documents in this case are likewise found in Florida.  *See Promex, LLC v. Perez Distrib. Fresno, Inc.*, 2010 WL 3452341, at *11 (S.D. Fla. Sept. 1, 2010).  Indeed, it may well be that Self is the only witness ***not*** located in Florida.  As such, interests of judicial and litigant economy suggest that this dispute is most fairly resolved in Florida.  Taken together, these considerations convince the Court that asserting personal jurisdiction over Self comports with constitutional notions of "fair play and substantial justice."

In sum, because the requirements of Florida's long-arm statute and due process are satisfied, the Court may exercise personal jurisdiction over Self.  Therefore, as to personal jurisdiction, Self's Motion to Dismiss is denied.

## II.   Venue

The Court next considers whether Self is entitled to a transfer of venue.  "The plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations."  *See Robinson*, 74 F.3d at 260.  As such, transfers should not be liberally given.  "Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money."  *Am. Aircraft Sales*, 55 F. Supp. 2d at 1351.  The proponent of transfer bears the burden of convincing the Court that the case belongs elsewhere.  *See id.*  Ultimately, the decision is purely discretionary.  *See id.*

"In order to overcome the presumption in favor of Plaintiff's choice of forum, the movant must show the balance of convenience is 'strongly in favor' of the transfer."  *See id.*  Self has not done so here.  Her only argument for transfer lies in the conclusory assertion that "Tennessee is a better place for this matter to be resolved because [she] reside[s] in Tennessee and [has] done so for many years; the other Plaintiff, Promise Care, is a Tennessee Corporation."  *See* Self Aff. ¶ 10.  This argument fails to persuade because, as discussed above, Plaintiff H.E.R.O is headquartered in Florida, the documents related to the case are maintained here, the health education program was primarily developed here, and the majority of the witnesses are here.  *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1282 (S.D. Fla. 2001) (conclusory assertions and vague statements are insufficient to warrant transfer of venue, especially where some witnesses and evidence are found in Florida).  The only factor militating in favor of transfer is that Self resides in Tennessee.  But this fact alone is insufficient to show that transfer of venue is appropriate.  Moving the case to Tennessee would

"merely shift inconvenience" from Self to Plaintiffs.  *See Robinson*, 74 F.3d at 260; *see also Tritak v. Metro. Cas. Ins. Co.*, 2008 WL 312675, at *4 (M.D. Fla. Feb. 4, 2008) ("this Court should not transfer this case to another district 'merely to shift the inconveniences of the parties'").  Again, as noted above, Self will be deposed in Tennessee and will likely not be haled into this District with great frequency before trial.  Therefore, upon consideration, the Court finds that the factors of convenience and fairness, coupled with the deference given to Plaintiffs' choice of forum, dictate that this case remain in the Southern District of Florida.  The portion of Self's Motion requesting transfer of venue is denied.

## Conclusion

For the reasons stated above, the Court finds that Defendant Self is subject to personal jurisdiction in Florida and that this action is properly venued in the Southern District of Florida. Accordingly, it is hereby **ORDERED and ADJUDGED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for transfer of venue is **DENIED**.  Defendant Self shall file a response to the Complaint by **May 31, 2012**, upon risk of default for any failure to comply.

**DONE and ORDERED** in chambers, at Miami, Florida on May 17, 2012.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

*Copies to:*
Counsel of record
Ida C. Self, *pro se*
3435 Hamberton Circle
Murfreesboro, TN 37128